IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JAMES TIEGS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*, <br><br> *Defendants*. | No. 3:21-cv-00147-PDW-ARS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION**

For the reasons stated below, Defendants Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, and Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency (collectively, USDA or Defendants), move to stay this case until final resolution of related litigation that has been certified as a class action under Federal Rule of Civil Procedure 23(b)(2).

In March 2021, Congress enacted Section 1005 of the American Rescue Plan Act (ARPA), which authorizes funds to relieve the U.S. Department of Agriculture (USDA) debts held by certain socially disadvantaged farmers. Congress determined that this relief was necessary to remedy the lingering effects of decades of discrimination against minority farmers in the implementation of USDA farm loan programs, which effects were exacerbated by COVID-19 and the failure of prior relief to reach those farmers. Plaintiffs filed this action to challenge USDA's implementation of Section 1005 on equal protection grounds. *See* Compl., ECF No. 1. Plaintiffs' lawsuit is not the only challenge to Section 1005. There are currently twelve such lawsuits pending before courts across the country, and multiple courts have already granted preliminary relief.

Recent developments in the earliest-filed challenge to Section 1005 warrant a stay of this case. Specifically, on July 1, 2021, the District Court for the Northern District of Texas certified two Rule

1

23(b)(2) classes of farmers and ranchers bringing an equal protection challenge to Section 1005 like the one Plaintiffs bring here. *See* Order on Class Cert. & PI, *Miller v. Vilsack*, 4:21-cv-595, ECF No. 60 (N.D. Tex.) (attached as Ex. A) (hereinafter "*Miller* Order"). At the same time, that court issued an injunction that prevents the Government from disbursing Section 1005 funds while the case is adjudicated on the merits. *Id.* Plaintiffs are members of the classes certified by *Miller*, and Defendants will be bound with respect to Plaintiffs by any class-wide relief ordered by the *Miller* court. Thus, continued adjudication of Plaintiffs' claim in this Court, separate from the classes to which they belongs, would be unnecessarily duplicative and risk inconsistent results. A stay, on the other hand, would not prejudice Plaintiffs, who will be bound by and benefit from any judgment applicable to the classes. In the meantime, Plaintiffs are protected by the preliminary injunction entered by the *Miller* court as well as the nationwide injunctions entered by other courts. A stay would also preserve judicial resources and prevent hardship to Defendants, who would otherwise be required to continue defending against duplicative claims in separate courts. For these very reasons, courts routinely stay proceedings pending resolution of a class action—particularly those under Rule 23(b)(2)—raising similar claims. This Court should do likewise and stay the case until final resolution of the class challenge to Section 1005 in *Miller*.[1]

## BACKGROUND

On July 6, 2021, Plaintiffs filed this case, alleging that USDA's implementation of Section 1005, which authorizes debt relief to socially disadvantaged farmers or ranchers, violates their right to equal protection. *See* Compl. This case is one of twelve brought in courts around the country raising

---

[1] Defendants are filing stay motions in all of the other related cases challenging Section 1005. In several of those cases, the district courts have temporarily stayed or extended deadlines pending a ruling on related motions. *See* Order, *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex. July 13, 2021), ECF No. 27 (extending deadline pending a ruling on motion for administrative stay); Order, *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn. July 15, 2021), ECF 47 (extending deadlines pending ruling on motion to stay proceedings); Order, *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or. July 16, 2021), ECF No. 28 (similar); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill. July 19, 2021), ECF No. 18 (similar); Minute Entry, *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.), ECF No. 58 (deferring entry of scheduling order).

a similar challenge.[2] Three courts have preliminarily enjoined disbursement of programmatic funds.
*See Miller* Order; *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.), PI Order, ECF No. 41; PI Order,
*Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.), ECF No. 41.[3]

     *Miller*, the first-filed case, commenced on April 26, 2021. Compl., *Miller*, ECF No. 1. On June
2, the five *Miller* plaintiffs moved to certify two classes of farmers and ranchers, Br. in Supp. of Mot.
for Class Cert., *id.*, ECF No. 13, and for a preliminary injunction, Br. in Supp. of Mot. for PI, *id.*, ECF
No. 18.[4] And on July 1, 2021, the *Miller* court granted both motions. *Miller* Order. Adopting the
plaintiffs' proposed class definitions in full, the court certified the following two classes under Rule
23(b)(2):

1. All farmers and ranchers in the United States who are encountering, or who will
   encounter, racial discrimination from the United States Department of Agriculture
   on account of section 1005 of the American Rescue Plan Act.

2. All farmers and ranchers in the United States who are currently excluded from the
   definition of "socially disadvantaged farmer or rancher," as defined in 7 U.S.C.
   § 2279(a)(5)–(6)[5] and as interpreted by the Department of Agriculture.

*Id.* at 5-6. Although *Miller* certified two classes, the plaintiffs and the court emphasized that the classes
were specific to the plaintiffs' challenge to Section 1005. *Id.* at 13; Class Cert. Reply 1, ECF No. 41
("The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued
enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act."); *id.* at 4

---

[2] *Miller*, 4:21-cv-595; *Holman*, 1:21-cv-1085; *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Carpenter v. Vilsack*, 21-cv-103 (D. Wyo.); *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Faust*, 1:21-cv-548; *McKinney*, 2:21-cv-212; *Kent*, 3:21-cv-540; *Dunlap*, 2:21-cv-942; *Rogers v. Vilsack*, 2:21-cv-1779 (D. Colo.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.). Defendants have not yet been served in all of these cases, and the Government does not waive any objections regarding service.
[3] The court in *Faust* had entered a temporary restraining order on June 8, 2021, but recently dissolved that order and deferred the *Faust* plaintiffs' motion for preliminary injunction in light of the preliminary injunction entered in *Wynn*. Order 7, *Faust*, ECF No. 49.
[4] Although the plaintiffs in *Miller* assert equal protection, Title VI, and statutory construction claims, their preliminary injunction and class certification motions relied solely on their equal protection challenge to Section 1005 that is virtually identical to Plaintiff's challenge here. *See* Br. in Supp. of Mot. for Class Cert. 4.
[5] Section 1005 incorporates the definition of "socially disadvantaged farmer or rancher" set out in 7 U.S.C. § 2279(a).

("These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005.").

Additionally, in granting the plaintiffs' preliminary-injunction motion, the court enjoined Defendants from

> discriminating on account of race or ethnicity in administering section 1005 of [ARPA] for any applicant who is a member of the Certified Classes. This prohibition encompasses: (a) considering or using an applicant Class Member's race or ethnicity as a criterion in determining whether that applicant will obtain loan assistance, forgiveness, or payments; and (b) considering or using any criterion that is intended to serve as a proxy for race or ethnicity in determining whether an applicant Class member will obtain loan assistance, forgiveness, or payments.

*Miller* Order 22-23. Like the other nationwide injunctions, the *Miller* injunction precludes disbursement of Section 1005 funds while the case is adjudicated on the merits. The parties submitted a proposed schedule for resolving the case on the merits on July 16, *see Miller*, ECF No. 70.[6]

## STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That power applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 707 (modifications omitted).

A court's power to stay proceedings allows it to ensure "economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When exercising its discretion to stay a case pending other proceedings, a court considers three factors: "the potential stay's impact on judicial resources, the hardship and inequity to the moving party if the case is not stayed, and the prejudice to the non-moving party." *Kellogg v. Watts Guerra, LLP*, 2018 WL 3432048, at *1 (D. Minn. July 16, 2018) (citing *Kemp v. Tyson Seafood Grp., Inc.*, 19 F. Supp. 2d 961, 964-65 (D. Minn. 1998)); *see also North Dakota v. EPA*, 2015 WL 7422349, at *2 (D.N.D. Nov. 10, 2015) (enumerating same factors).

---

[6] On June 29, Defendants filed a partial answer and partial motion to dismiss the *Miller* plaintiffs' non-Section 1005 claims. *See* ECF Nos. 49, 51.

With respect to the second and third factors, the court will "weigh the competing interests of the parties," *Scheffler v. Equifax Info. Servs., LLC*, 2016 WL 24969, at \*2 (D. Minn. Feb. 3, 2016). With respect to judicial economy, a court may stay a case "if it raises issues that substantially duplicate those raised by a case pending in another court." *Ritchie Capital Mgmt., LLC v. Jeffries*, 653 F.3d 755, 763 n.3 (8th Cir. 2011); *see also Kunshier v. Walz*, 2019 WL 762687, at \*1 (D. Minn. Feb. 21, 2019) ("[T]he general principle is to avoid duplicative litigation.") (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time." *B&B Hardware, Inc. v. Hargus Indus., Inc.*, 575 U.S. 138, 140 (2015).

## ARGUMENT

The Court should stay this case until final resolution of the class challenge to Section 1005 in *Miller*.[7] All relevant factors support this proposed stay. First, and most significantly, a stay serves the interests of judicial economy. Because the class action in *Miller* raises the same claims that Plaintiffs do, and because that case was the first-filed, staying this case will avoid unnecessarily duplicative litigation and potentially inconsistent results. That is all the more true when, as here, Plaintiffs are members of the classes certified in *Miller* and will directly benefit from any relief granted in *Miller*. Second, a stay will not prejudice Plaintiffs, who are already protected by multiple preliminary injunctions and who may receive all the relief they are entitled to upon entry of final judgment in *Miller*. Third, continuing to adjudicate Plaintiffs' claim in this Court and in *Miller* simultaneously would impose hardship on Defendants, who would be required to defend against identical claims in multiple courts at the same time—including in eleven other cases around the country. Finally, courts regularly stay cases pending resolution of related class actions. This Court should do likewise.

## I.     A stay would promote judicial economy and avoid inconsistent results.

First, staying this case would promote judicial economy by avoiding simultaneous, duplicative litigation of Plaintiffs' claims in multiple courts and protecting the parties and the courts from

---

[7] Defendants have not appealed the order granting a preliminary injunction and certifying the classes in *Miller* but reserve their right to do so. If the classes in *Miller* are decertified for any reason, the parties can brief this Court on whether to lift the stay.

conflicting results. Plaintiffs undisputedly fall within the definition of the *Miller* classes: They are farmers who allege that they are being subjected to racial discrimination due to USDA's provision of Section 1005 debt relief to socially disadvantaged farmers, because the definition of "socially disadvantaged farmer or rancher" does not automatically include farmers like them who self-identify as white. And the classes in *Miller* were certified under Rule 23(b)(2), which means that Plaintiffs have no right to opt out of any judgment applicable to the classes. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-63 (2011). Thus, any relief ordered in *Miller* will apply equally to Plaintiffs as it does to all other class members. *Id.* at 361-62 (noting that the relief sought in a Rule 23(b)(2) class "perforce affect[s] the entire class at once"); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1312 (11th Cir. 2012) ("Class action judgments will typically bind all members of the class."). Indeed, that relief will be *binding* on Plaintiffs and preclude them, like all other class members, from obtaining an alternative judgment in another proceeding. *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984).

Accordingly, permitting Plaintiffs to continue litigating their claims in this Court, separate from the rest of the class to which they belong, would create a risk of inconsistent results that could undermine the preclusive effect of a classwide judgment and confuse Defendants' obligations to different class members. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993), *aff'd,* 193 F.3d 1185 (11th Cir. 1999) (expressing concern with "avoid[ing] conflicting orders"). For instance, if the plaintiff class succeeds in its equal protection challenge to Section 1005 in *Miller* but Plaintiffs lose their claim here (or vice versa), Defendants would be subject to conflicting judgments concerning the constitutionality of Section 1005 and, importantly, their obligations toward these Plaintiffs. Staying this case pending resolution of the class challenge to Section 1005 would promote judicial efficiency by avoiding this risk of contradictory outcomes.

*Miller* was certified as a class action including Plaintiffs *before* Plaintiffs filed their case. But even if that were not so, it would not undermine the preclusive effect of any classwide judgment or justify Plaintiffs' continued litigation of their claims separately in this Court. *Miller* was the first-filed case, and "the 'first-filed rule' generally grants district court judges the discretion to dismiss or stay an action when a previously-filed concurrent action is pending in another judicial district." *CruiseCompete, LLC*

Case 3:21-cv-00147-PDW-ARS   Document 9   Filed 07/21/21   Page 7 of 11


*v. Smolinski & Assocs., Inc.*, 859 F. Supp. 2d 999, 1014 (S.D. Iowa 2012) (citation omitted). The rule is "[i]ntended to conserve judicial resources and avoid duplicative litigation." *Id.* "The prevailing standard is that" courts should apply the rule "in the absence of compelling circumstances." *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir. 1990) (citation omitted).

No compelling circumstances weigh against applying the prevailing standard in this case. Staying this action is consistent with the purposes of conserving judicial resources and avoiding duplicative litigation on which the first-filed rule is based. In light of the certification of a class in the first-filed case that includes Plaintiffs here, *these Plaintiffs' claims* are being simultaneously litigated in two separate courts. And "[i]f a class member cannot relitigate issues after final judgment in a class action suit, by analogy a class member should not be able to prosecute a separate equitable action once the member's class has been certified." *Bennett v. Blanchard*, 802 F.2d 456 (6th Cir. 1986) (table). Thus, litigating Plaintiffs' claim separately here would only "interfere[] with the ongoing class action," *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991), and undermine "[t]wo of the primary purposes underlying [Rule] 23": avoiding "duplicative litigation and inconsistent standards." *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982). Under general principles of judicial economy, underscored by the first-filed rule, the better course is to stay this action pending resolution of the class action certified in the earliest-filed Section 1005 case.

## II.     A stay would not prejudice Plaintiffs and would avoid hardship to the Government.

For similar reasons, staying this case pending resolution of the class challenge to Section 1005 in *Miller* would not prejudice Plaintiffs. Again, the classes certified in *Miller* challenge the same agency action and seek the same relief as Plaintiffs challenge and seek here. *Compare* Pls.' Br. in Supp. of Prelim. Inj. ECF No. 18, *Miller* (challenging the implementation of Section 1005 based on USDA's interpretation of "socially disadvantaged farmer or rancher" with reference to race), *with* Compl. (same). Because Defendants will be bound by a final judgment in the class action with respect to these Plaintiffs, staying their duplicative case in this Court will not impede their ability to obtain the relief they seek. And no harm could possibly befall Plaintiffs while their case is stayed and the class litigation continues, as three overlapping preliminary injunctions are "preserv[ing] the status quo" in the

meantime. Order 7, *Faust* (staying the plaintiffs' preliminary injunction motion because the *Wynn* nationwide injunction adequately protected the plaintiffs).

Moreover, this case is still in its early stages. The sole upcoming deadline in this case is Defendants' deadline to respond to Plaintiffs' Complaint, by September 10. By contrast, Defendants have already answered the Section 1005 challenge in *Miller*, the court has already issued a preliminary injunction, and the parties have submitted a joint schedule for further proceedings in that case. Thus, staying this case at such an early stage of the proceedings would not unnecessarily disrupt or delay litigation of Plaintiffs' claim but would only promote its efficient resolution before any case deadlines have passed.

Additionally, staying this case would avoid hardship to the Government. As stated, there are currently eleven other substantively similar lawsuits pending around the country, with additional requests for preliminary injunctive relief pending in some of those cases.[8] Particularly given the importance of the issues at stake, requiring the Government to defend against any one of them separately from the class action—contending with differing case schedules and discovery obligations—would run contrary to the Government's and the public's interest in just and efficient resolution of cases, and especially those of "extraordinary public moment." *Clinton*, 520 U.S. at 707 ("[E]specially in cases of extraordinary public moment, a plaintiff may be required to submit to delay." (modifications omitted)). Requiring the Government to defend against up to *twelve* cases simultaneously—on varying schedules and in different jurisdictions—would substantially burden the Government's (and the courts') resources without benefitting Plaintiffs.

### III.   Courts regularly stay cases pending resolution of related class actions.

Finally, a stay here would be consistent with other courts' recognition that a stay (or even dismissal) is generally warranted upon certification of a class of which the plaintiff is a member.[9] *See,*

---

[8] *See* ECF No. 9, *McKinney*, 2:21-cv-212; ECF No. 11, *Dunlap*, 2:21-cv-942.

[9] Indeed, federal courts regularly stay cases when a class certification motion is only *pending*, rather than already granted, in an earlier-filed related case. *See, e.g.*, *Sanchez-Cobarrubias v. Bland*, CV609-005, 2011 WL 841082, at *1 (S.D. Ga. Mar. 7, 2011) (reciting case history); *Bargas v. Rite Aid Corp.*, CV1303865MWFJEMX, 2014 WL 12538151, at *3 (C.D. Cal. Oct. 21, 2014).

*e.g., Jiaming Hu v. U.S. Dep't of Homeland Sec.*, 4:17-cv-02363, 2018 WL 1251911, at \*4 (E.D. Mo. Mar. 12, 2018) ("Since class members generally cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." (internal quotation marks omitted) (citing cases dismissing actions where the plaintiff was a member of certified class in another case)); *see also Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (affirming dismissal without prejudice "based on the rule against duplicative litigation" where plaintiff's allegations "duplicated claims that had been included in separate class actions" against the defendant, and plaintiffs "were members of those classes"); *Aleman ex rel. Ryder Sys., Inc. v. Sancez*, 21-cv-20539, 2021 WL 917969, at \*2 (S.D. Fla. Mar. 10, 2021) (noting that "the Court entered an order staying proceedings" pending resolution of a related class action, "recognizing that the cases are related, and that the resolution of the issues raised in the Class Action will necessarily impact the proceedings in" the case); *Richard K. v. United Behavioral Health*, 18-cv-6318, 2019 WL 3083019, at \*7 (S.D.N.Y. June 28, 2019), report and recommendation adopted, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (stay and dismissal without prejudice "are routinely found appropriate where, as here, the claims made in an individual lawsuit overlap with the claims being pursued by a certified class of which the individual plaintiff is a member").

In such cases, courts have ordered a stay of the same scope Defendants seek here: a stay of all proceedings until final resolution of the related class action. *See, e.g.*, *Gonzales v. Berryhill*, 18-cv-603, ECF No. 28 (D.N.M. Mar. 5, 2019) (staying proceedings until the district court in a related case "issues a decision on the forthcoming motion for class certification and, if a class is certified in [the related case], until the conclusion of all proceedings in [that case], including any appeals.").

The First Circuit's decision in *Taunton Gardens Co. v. Hills* illustrates the propriety of a stay in circumstances strikingly similar to this case. 557 F.2d 877 (1st Cir. 1977). There, the plaintiffs challenged "the administration of a major federal program and the disbursement of a significant amount of federal money," and the case thus "present[ed] issues of 'public moment.'" *Id.* at 879. And there, much like here, the implementation of that federal program had spurred litigation "in more than ten district courts" around the country, and the Government was subject to multiple injunctions. *Id.*

Moreover, like this case, a related action was certified as a class action. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 526 (D. Mass. 1976). Although the plaintiffs in *Taunton Gardens* were not members of that class, the court noted that they challenged the same program and sought identical relief and, thus, that the class action determined the merits of the case. *Id.* Accordingly, the district court found it was in "the interest of justice" to stay all proceedings—including litigation of the pending motion for preliminary injunction—"pending entry of a final judgment in the class action case." *Id.* The First Circuit upheld the stay, also emphasizing that it was in the "public interest, the court's interest in efficient procedures, and the interest of justice" to stay the case and afford the Government "a reasonable opportunity to resolve its obligations in the national class action." 557 F.2d at 879. It also pointed out that the stay's duration, lasting until an appeal of the class action judgment was resolved, was reasonable. *Id.*

All of the factors considered by *Taunton Gardens* support a stay here: Plaintiffs challenge a significant federal program presenting issues of "public moment," and undersigned counsel are defending against claims in twelve courts around the country. Additionally, the recently certified classes in *Miller* seek the same relief Plaintiffs seek in this case—and indeed, since Plaintiffs are members of those classes, resolution of the challenge to Section 1005 in *Miller*, and any relief granted by that court, will operate to protect Plaintiffs together with all other class members. Finally, the scope of the stay requested here—until resolution of the class action—is the same as that approved in *Taunton Gardens* and other cases. There, as here, the "public interest, the court's interest in efficient procedures, and the interest of justice" support a stay of all procedures pending resolution of the class challenge to Section 1005 in *Miller*.

## CONCLUSION

For these reasons, the Court should stay proceedings in this case pending resolution of the class challenge to Section 1005 in *Miller*.

Dated: July 21, 2021                         Respectfully submitted,

                                             BRIAN M. BOYNTON

Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

 /s/ *Michael F. Knapp*
EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (Ohio Bar No. 96662)
MICHAEL F. KNAPP (CA Bar. No. 314104)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW Room 12008
Washington, D.C. 20530
(202) 514-2071 (telephone)
(202) 616-8470 (facsimile)
Michael.F.Knapp@usdoj.gov

*Attorneys for Defendant*