## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

James Tiegs, et al.,                            )
                                                )
              Plaintiffs,                        )
                                                )        Case No. 3:21-cv-147
vs.                                             )
                                                )            **ORDER**
Thomas J. Vilsack, in his official              )
capacity as Secretary of Agriculture, et al.,  )
                                                )
              Defendants.                        )

Plaintiffs, five farmers from four different states, including North Dakota, brought this lawsuit against the Secretary of Agriculture and the Administrator of the Farm Service Agency seeking nominal damages as well as declaratory and injunctive relief against section 1005 of the American Rescue Plan Act. Defendants seek a stay pending resolution of a related class action, Miller v. Vilsack, No. 4:21-cv-595 (N.D. Tex. Apr. 26, 2021), now pending in the Northern District of Texas. (Doc. 8). Plaintiffs oppose a stay. (Doc. 12).

### Background

In March 2021, the American Rescue Plan Act was signed into law. Pub. L. No. 117-2 (2021). Section 1005 of that Act establishes a loan forgiveness program for socially disadvantaged farmers and ranchers. Id. § 1005. The United States Department of Agriculture interprets "socially disadvantaged" as meaning those who belong to certain racial or ethnic groups, including, but not limited to, "American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos." Notice of Funds Availability, 86 Fed. Reg. 28.330 (May 26, 2021).

Section 1005 is subject to several equal protection lawsuits.[1] One of those lawsuits, Miller v. Vilsack, was filed in the Northern District of Texas in late April 2021. On July 1, 2021, the Miller court enjoined implementation of section 1005 and certified two classes under Federal Rule of Civil Procedure 23(b)(2).[2] (Doc. 9-1, p. 2). Plaintiffs do not dispute that they are members of both classes. (Doc. 12, p. 11).

Plaintiffs filed suit in this district five days after the Miller court's order granting a preliminary injunction and class certification. (Doc. 1). Defendants now seek a stay pending resolution of Miller to avoid the prospect of inconsistent results and wasted resources. (Doc. 9, p. 5). Plaintiffs respond that the issues here and in Miller are distinct and that a stay would cause years of delay in the resolution of their claims. (Doc. 12, p. 7).

## Law and Discussion

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997). In exercising its discretion, the court must balance three factors: (1) the judicial resources

---

[1] This case makes twelve. Nuest v. Vilsack, No. 21-cv-1572 (D. Minn. July 7, 2021); Rogers v. Vilsack, No. 2:21-cv-1779 (D. Colo. June 29, 2021); Dunlap v. Vilsack, 2:21-cv-942 (D. Or. June 24, 2021); Joyner v. Vilsack, No. 1:21-cv-1089 (W.D. Tenn. June 15, 2021); McKinney v. Vilsack, No. 2:21-cv-212 (E.D. Tex. June 10, 2021); Kent v. Vilsack, 3:21-cv-540 (S.D. Ill. June 7, 2021); Holman v. Vilsack, No. 1:21-cv-1085 (W.D. Tenn. June 2, 2021); Carpenter v Vilsack, No. 21-cv-103 (D. Wyo. May 24, 2021); Wynn v. Vilsack, No. 3:21-cv-514 (M.D. Fla. May 18, 2021); Faust v. Vilsack, No. 1:21-cv-548 (E.D. Wis. Apr. 29, 2021); Miller v. Vilsack, No. 4:21-cv-595 (N.D. Tex. Apr. 26, 2021);

[2] The first class includes "[a]ll farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act." (Doc. 9-1, p. 2). The second class includes "[a]ll farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)–(6) and as interpreted by the Department of Agriculture." Id.

that would be saved by granting a stay, (2) potential prejudice to the non-moving party if a stay were granted, and (3) hardship and inequity to the moving party if the action is not stayed. <u>North Dakota v. U.S. Env't Prot. Agency</u>, No. 3:15-CV-59, 2015 WL 7422349, at *2 (D.N.D. Nov. 10, 2015). As movants, defendants bear the burden of establishing the basis for a stay. <u>Id.</u>

## 1.   **Judicial Resources**

Defendants argue a stay pending the resolution of <u>Miller</u> would avoid "simultaneous, duplicative litigation of Plaintiffs' claims in multiple courts and protect[ ] the parties and the courts from conflicting results." (Doc. 9, pp. 5-6). Plaintiffs respond that this case involves different issues than <u>Miller</u> and, even if there is some risk of conflicting results, there could be benefits from the issues raised by section 1005 percolating through multiple federal courts. (Doc. 12, p. 13).

Plaintiffs are unnamed members of both <u>Miller</u> classes. <u>Id.</u> at 11. Thus, any relief granted in <u>Miller</u> will apply to plaintiffs, and plaintiffs will be bound by that relief. <u>See Goff v. Menke</u>, 672 F.2d 702, 704 (8th Cir. 1982) ("If a class member cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified."). Because both cases raise equal protection challenges to section 1005, plaintiffs' presence here and in <u>Miller</u> produces a risk of conflicting results and duplicative litigation.

Plaintiffs state they intend to opt-out of the <u>Miller</u> class, (Doc. 12, p. 11), although it seems unlikely they could do so. Both classes are certified under Federal Rule of Civil Procedure 23(b)(2). (Doc. 9-1). Classes certified under Rule 23(b)(2) are mandatory, providing "no opportunity for . . . class members to opt out." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 362 (2011). This is because Rule 23(b)(2) classes are formed when

3

relief can be provided "only as to all of the class members or as to none of them." Id. at 360.

The timing of filing the cases also weighs in favor of a stay. The first-filed rule provides that, in the absence of compelling circumstances, the first court in which jurisdiction attaches has priority to consider the case. Schlenker v. Soc. Sec. Admin., No. 3:14-CV-25, 2015 WL 12868082, at *3 (D.N.D. Sept. 17, 2015). Miller is the first-filed case. That case was filed, and the classes were certified, before plaintiffs filed in this district. Here, the parties stipulated to extending the time for defendants to answer the complaint, and no scheduling order has been entered.

Plaintiffs argue the first-filed rule should not apply because their case is distinct from Miller. In support of this argument, plaintiffs cite Schlenker and Barnes v. Zurn Pex, Inc. Both are distinguishable. In Barnes, plaintiffs in the first-filed case had not yet obtained class certification. No. 1:07-CV-074, 2008 WL 111217, at *3 (D.N.D. Jan. 9, 2008). In Schlenker, the first-filed, parallel class action included a host of jurisdictional arguments absent from Schlenker's case. 2015 WL 12868082, at *3. Here, unlike in Barnes, the Miller plaintiffs' class was certified and, unlike in Schlenker, that class and plaintiffs are challenging the same law on the same grounds. Because staying plaintiffs' case would avoid duplicative litigation and Miller is the first-filed case, this factor weighs in favor of a stay.

## 2.    Potential Prejudice to Plaintiffs

Defendants argue plaintiffs would not be prejudiced by a stay because section 1005 has been preliminary enjoined in several other districts and plaintiffs remain class members in Miller, where they may obtain relief. (Doc. 9, p. 7). Plaintiffs respond that a

stay would result in a "prolonged and indefinite delay" of the resolution of their claims. (Doc. 12, p. 8).

Three different preliminary injunctions are now enjoining implementation of section 1005.[3] Thus, there is little likelihood that section will be implemented if this case is stayed pending the resolution of <u>Miller</u>. And when <u>Miller</u> is resolved, any relief granted in that case will apply to plaintiffs as class members.

Plaintiffs argue a stay would deprive them of their chosen counsel and ability to conduct discovery. <u>Id.</u> at 10. The court credits the <u>Miller</u> court's finding that class counsel will adequately represent the class, including plaintiffs. (<u>See</u> Doc. 9-1, p. 12). Plaintiffs' concerns may also be remedied by filing amicus briefs and seeking intervention in <u>Miller</u>. <u>See</u> <u>Smith v. SEECO, Inc.</u>, 865 F.3d 1021, 1025 (8th Cir. 2017) (explaining that Rule 23 and Rule 24 envision intervention as a means of securing adequacy of counsel in a class action). Plaintiffs, unlike the <u>Miller</u> plaintiffs, intend to conduct discovery and argue a stay would deprive them of this tool, though it is unclear what facts plaintiffs intend to discover. (Doc. 12, pp. 9-10). Plaintiffs' challenge to section 1005 is facial, not as-applied, and fact discovery for standing purposes does not sufficiently distinguish this case from <u>Miller</u>. Because section 1005 is now enjoined and plaintiffs can obtain relief in <u>Miller</u>, this factor weighs in favor of a stay.

---

[3] Preliminary injunctions against section 1005 have been ordered in <u>Holman v. Vilsack</u>, No. 21-1085-STA-JAY, 2021 WL 2877915 (W.D. Tenn. July 8, 2021), <u>Miller</u>, 4:21-cv-595, Doc. 60, and <u>Wynn v. Vilsack</u>, No. 3:21-CV-514-MMH-JRK, 2021 WL 258067 (M.D. Fla. June 23, 2021).

**3.     Hardship and Inequity to Defendants**

Finally, the parties dispute whether staying this case would avoid hardship to defendants. Defendants argue a stay would avoid the hardship caused by defending multiple challenges to section 1005 in varying jurisdictions. Plaintiffs disagree, responding that the Department of Justice has ample capacity to defend against multiple lawsuits.

A stay would avoid hardship to defendants. Equal protection challenges against section 1005 have been filed throughout the country. Staying this case would avoid defendants responding to the same arguments in different courts. Even though several challenges to section 1005 have been stayed,[4] the continued presence of duplicative litigation burdens defendants. This factor weighs in favor of a stay.

## Conclusion

Defendants have established that a stay of this case would save judicial resources, not unduly prejudice plaintiffs, and avoid hardship to defendants. Thus, defendants' motion to stay, (Doc. 8), is **GRANTED**, and the case is **STAYED** pending the resolution of Miller, or until further order of this court. The parties shall file a joint status report every six months from the date of this order, beginning March 7, 2022, or after the resolution of Miller, whichever occurs first.

---

[4] So far, four cases challenging section 1005 have been stayed. McKinney, No. 2:21-cv-212, Doc. 40; Faust, No. 1:21:cv-540, Doc. 66; Joyner, No. 1:21-cv-1089, Doc. 21; Carpenter, No. 21-cv-103, Doc. 33.

The sole order denying a stay relies on issues unique to the Sixth Circuit and that case. See Holman v. Vilsack, No. 121CV01085STAJAY, 2021 WL 3354169 (W.D. Tenn. Aug. 2, 2021).

**IT IS SO ORDERED**.

Dated this 7th day of September, 2021.

                                          */s/ Alice R. Senechal*
                                          Alice R. Senechal
                                          United States Magistrate Judge